UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SIVANNARAYANA BARAMA,<br><br>Defendant. | Case No. 19-cr-00463-RS-2<br><br>**ORDER DENYING RENEWED MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL** |

## I. INTRODUCTION

The operative indictment in this case charged Sivannarayana Barama ("Defendant") with one count of conspiracy and attempt to commit securities fraud under 18 U.S.C. § 1349, and four counts of securities fraud under 18 U.S.C. § 1348, for the securities transactions that Defendant placed using allegedly inside information of Palo Alto Networks ("PANW"), obtained from a PANW employee, Janardhan Nellore. It alleged that, as a result of using nonpublic PANW information before PANW publicly announced its financial performance, Defendant was able to make millions of dollars.

Trial in the matter commenced on December 6, 2022. The jury heard opening statements, evidence, and closing arguments for approximately 6 days. At the end of the government's case, the defense unsuccessfully moved for a judgment of acquittal under Rule 29.[1] After instructions,

---

[1] Defendant's first Rule 29 motion was based on the following grounds: (1) there was insufficient proof that Barama had actual knowledge of Nellore's embezzlement of PANW confidential

the jury retired to deliberate, and returned a guilty verdict only on the four counts of securities fraud under 18 U.S.C. § 1348(2).

Defendant now renews its motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29—or, in the alternative, moves for a new trial under Federal Rule of Criminal Procedure 33. For the reasons that follow, Defendant's motion is denied.

## II.  LEGAL STANDARD

In considering a motion for acquittal under Rule 29, the evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in the government's favor. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002); *see also United States v. Salmonese*, 352 F.3d 608, 618 (2d Cir. 2003) (the fact that inferences favorable to the defendant could also be drawn from the evidence is of no import because "the task of choosing among permissible competing inferences is for the jury, not a reviewing court"). A court may not view the government's evidence in isolation, but must examine that evidence as a whole. *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005). Both direct and circumstantial evidence must be credited without evaluating or speculating on the weight a jury might give it. *United States v. Martin*, 228 F.3d 1, 10 (1st Cir. 2000). It is "the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *Alarcon-Simi*, 300 F.3d at 1176 (quoting *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977)). The question "is not whether the evidence excludes every hypothesis except that of guilt but rather whether the trier of fact could reasonably arrive at its conclusion." *United States v. Nevils*, 598 F.3d 1158, 1165 (9th Cir. 2010). If any rational trier of fact could find the essential

---

revenue information; (2) there was insufficient proof that Barama had an intent to defraud; (3) Nellore was not a credible witness; (4) there was insufficient proof that Nellore conveyed revenue information to Barama; and (5) as a result of the above, the Government's case relied entirely on circumstantial evidence requiring Nellore's interpretation. Trial Tr. 977:25-979:6.

elements of the crime beyond a reasonable doubt, then the motion must be denied. *Id.* at 1164.

Although a district court has broader power to grant a motion for a new trial under Rule 33 and may weigh the evidence itself and judge the credibility of witnesses, *United States v. A. Lanoy Alston, D.M.D. P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992), Rule 33 motions are generally disfavored and should only be granted in "exceptional" cases. *United States v. Del Toro–Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012) (citing *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981)). Nonetheless, the defendant "bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is a real concern that an innocent person may have been convicted." *United States v. Halali*, No. 14-CR-00627-SI-1, 2017 WL 3232566, at *2 (N.D. Cal. July 28, 2017) (quoting *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009)). If the court concludes that, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (quotation marks and citations omitted).

## III. DISCUSSION

Defendant's renewed motion for acquittal argues that the government failed to offer sufficient evidence to prove the elements of § 1348(2)—in particular, that the government: (1) failed to advance a theory under § 1348(2); (2) failed to prove materiality; and (3) failed to prove that Barama had an intent to defraud. In the alternative, Defendant also moves for a new trial on five separate grounds: (1) the evidence contradicts the verdict; (2) the mixed verdict that resulted is "logically impossible"; (3) the jury was not properly instructed with respect to misrepresentation or materiality; (4) the theory of material misrepresentation was either a constructive amendment or a prejudicial variance from the theory presented in the indictment; and (5) the evidence at trial was insufficient for conviction.

### A. Motion for Acquittal
   1. Theory of Guilt Under 18 U.S.C. § 1348(2)

Defendant first claims the government failed to advance a theory under § 1348(2). As support, Defendant raises the government's comments during the December 9, 2022 charging conference, wherein the parties both agreed to remove an instruction relating to material omission; the government's frequent references during trial to a "scheme to defraud," which is language only found in § 1348(1); and the government's "conflation" of § 1348(1) and § 1348(2) during closing arguments. Dkt. 232 at 15.

These arguments fail to persuade. First, Defendant's selective quotations from the charging conference do not represent the full picture. The full exchange is as follows:

> **MR. FARNHAM**: And at the bottom of that instruction, there's a paragraph that says (as read): "To convict the defendant of securities fraud based on omissions of material facts . . . ." I don't think we need that paragraph. That's not really part of the theory of this case. It's more appropriate in a false statements type securities fraud case. *And, in any event, it would only apply to Section 2 of 1348, which is the false statements section, not Section 1. So it shouldn't be – it shouldn't be a generally applicable paragraph. It would only apply to Section 2. But I don't think that it's necessary in this case because that's not the theory, or any of the facts really support an omission of material facts case.* This was proposed by the Government.
>
> **THE COURT**: No, I understand.
>
> **MR. FARNHAM**: I realize that I made a mistake in including it and probably putting it in the wrong place, but I don't think we need it.
>
> **MS. CHUNG**: I agree, Your Honor.
>
> **THE COURT**: Well, that makes it easy. Okay. So I'll take that paragraph out. Okay.

Trial Tr. 922:18-923:14 (emphasis added). The full context of the conversation makes plain the government's position that the instruction be removed because it was not generally applicable to both § 1348(1) and § 1348(2), and because the theory against Barama was not an omission of material facts—not because the government was arguing there were no false statements in the case whatsoever. As the government explains, the instructions included a "description of what would

constitute a fraudulent omission in . . . circumstances in which a party has a duty to speak," Dkt. 241 at 11, which indeed was not the theory the government advanced. Defendant's argument that they understood the exchange to mean that the "government did not view Mr. Barama's case as a 'false statements type of securities fraud case'" Dkt. 232 at 14—and that thereby § 1348(2) would not apply—is belied by Defendant's lack of objection to a § 1348(2) instruction altogether. Throughout the trial, the government never indicated it was *not* pursuing liability under § 1348(2), and the removal of the material omission instruction does not indicate otherwise.

Second, while "scheme to defraud" is indeed a formulation applicable only to § 1348(1), the government did not, as Defendant suggests, *only* speak of a scheme to defraud, or so conflate the two sub-sections of § 1348 as to neglect to advance any theory of guilt. In describing the elements of § 1348, the government did inaccurately claim that "[t]he first element of both sections is the scheme to defraud." Trial Tr. 1094:18-19. This singular instance, however, is dwarfed by the government's various references to the actual language of § 1348(2). Just a few seconds before it covered the elements of § 1348 in the language quoted above, the government explained that "a scheme or artifice to defraud or a scheme to obtain money or property can be the embezzling or misappropriation of confidential business information." *Id.* at 1094:6-8. Toward the end of its closing argument, the government referred to both sections of § 1348. Although it said that the two sub-sections were "very similar," the government referred the jury to the Court's instructions, Trial Tr. 1099:3 ("As you recall, the instructions have elements for both [sub-sections].")[2], and then specifically outlined the distinction between § 1348(1) and § 1348(2): "One has a scheme to defraud—scheme or artifice to defraud; one refers to a scheme or artifice to obtain money or property through false pretenses." *Id.* at 1099:4-5.

---

[2] The jury was properly instructed as to the elements of § 1348(2). Trial Tr. 1054:13-21 ("Title 18, United States Code, Section 1348, subsection (2) makes it a federal crime to knowingly execute a scheme or artifice to obtain by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any security . . ."); 1055:13-24 ("[T]he Government must prove each of the following elements beyond a reasonable doubt: First, the defendant knowingly executed or attempted to execute a scheme or artifice to obtain money or property by means of materially false or fraudulent pretenses, representations, promises or omitted facts . . .").

1  Defendant argues that the government needed to prove a specific false statement or
2  misrepresentation; otherwise, allowing the conviction to stand "would be equivalent to relieving
3  the government of its obligation to prove a key element of section 1348(2)." Dkt. 232 at 15. The
4  government disagrees, explaining that under the legal principles underlying federal fraud
5  statutes—like the mail and wire fraud statutes, upon which 18 U.S.C. § 1348 was based—it was
6  not required to prove that the defendant himself made a misstatement to PANW. Rather, a
7  conviction under § 1348 requires only evidence of "the existence of a scheme to obtain
8  confidential information through false or fraudulent pretenses, representations, or promises," and
9  proof of the "defendant's knowing participation in the execution of that scheme." Dkt. 241 at 8
10 (citing *United States v. Lothian*, 976 F.2d 1257, 1267 (9th Cir. 1992)). A conviction can be
11 sustained, therefore, "so long as the evidence shows that the scheme as a whole was 'reasonably
12 calculated to deceive.'" Dkt. 241 at 7 (quoting *United States v. Woods*, 335 F.3d 993, 998 (9th Cir.
13 2003)). Defendant responds that the government's position is true only as to § 1348(1) but not
14 § 1348(2), and that caselaw interpreting 18 U.S.C. § 1344 is more helpful, as the bank fraud
15 statute's dual sub-section structure makes it a better analogue to § 1348.

16 Here, Defendant's analysis regarding the structure of § 1348 is well taken. The text of 18
17 U.S.C. § 1348 bears repeating: § 1348(2) imposes criminal liability on "[w]hoever knowingly
18 executes, or attempts to execute, a scheme or artifice . . . to obtain, by means of false or fraudulent
19 pretenses, representations, or promises, any money or property in connection with the purchase or
20 sale of any commodity for future delivery, or any option on a commodity for future delivery . . . ."
21 Whereas the bank fraud statute contains two subsections in the same manner as § 1348—one
22 targeting schemes "to defraud," 18 U.S.C. § 1344(1), and the other targeting schemes to obtain
23 money or property "by means of false or fraudulent pretenses, representations, or promises," 18
24 U.S.C. § 1344(2)—the mail and wire fraud statutes do not. *Compare id., with* 18 U.S.C. 1343
25 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for
26 obtaining money or property by means of false or fraudulent pretenses, representations, or
27 promises, transmits or causes to be transmitted by means of wire, radio, or television

communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.") *and* 18 U.S.C. 1341 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . ."). As a result, the cases on which the government relies to argue that a conviction can be sustained on evidence that a defendant merely participated in a fraudulent scheme, such as *Woods* and *Lothian*, do not necessarily compel a similar conclusion here.[3]

This distinction does not, however, lead to the conclusion that no reasonable juror could have found liability pursuant to § 1348(2). There was ample documentary and testimonial evidence provided at trial that Nellore was subject to, and aware of, his continuing obligations to maintain and safeguard the confidentiality of company information. *See* Trial Tr. 282:5-302:2 (discussing PANW's policies around confidentiality of company information and insider trading); 307:12-313:6 (discussing Nellore's acknowledgment of, and agreement to abide by, company policies). There was similarly evidence provided at trial that Barama, a former contractor for PANW and employee of another publicly-traded company, knew that Nellore could not have used or disclosed financial information in compliance with company policies. *See, e.g.*, Trial Tr. 254:4-256:5; 491:8-494:16.[4] Defendant was, therefore, clearly a participant in the scheme. Furthermore,

---

[3] The government also relies on *United States v. Blaszczak*, 947 F.3d 19 (2d Cir. 2019), vacated on other grounds at 141 S. Ct. 1040 (2021), for the proposition that "[t]he concept of 'fraud' includes the act of embezzlement," *id.* at 27, and "it is impossible for a person to embezzle the money of another without committing a fraud upon him." *Id.* at 36. The quoted analysis, however, arose specifically in the context of rejecting the personal benefit test, and did actually distinguish between § 1348(1) and § 1348(2) by grouping—and thereby discussing them—separately. It does not explicitly hold that mere participation in an embezzlement scheme necessarily proves *all* elements of § 1348(2)—and the government's invitation to read *Blaszczak* as providing a sufficient basis to so conclude is rejected.

[4] In conjunction with other pieces of evidence—such as testimony from Nellore about Barama's knowledge, and the timing of communications between Defendant and Nellore and trades in comparison with earnings announcement dates—the available evidence contradicts Defendant's argument that he was ignorant of Nellore's scheme, or the confidential nature of the information he was receiving.

there was also evidence that Defendant misled Nellore about the size of his trades—that is, the number of options contracts that Barama acquired and held. Rather than the comparatively smaller transactions that Nellore suggested, Defendant made larger trades. *See, e.g.*, Exhibit 150 at 6, Line ID 244 and 263 (indicating Defendant bought 30 call options but told Nellore he bought 5); *see also* Trial Tr. 628:2-11 (Nellore expressing surprise at Defendant's profits from PANW stocks, as they had only discussed trades of relatively smaller sizes); 895:25-896:2. Combined with the unquestionable embezzlement perpetrated by Nellore, these were indeed false pretenses or representations that Defendant used to obtain confidential information that he then used to trade for money.[5] Based on the evidence at trial, therefore, a reasonable juror could find the Defendant guilty pursuant to § 1348(2).

Contrary to Defendant's claim, "the jury's decision to acquit Mr. Barama under section 1348(1)" does *not* "necessarily require[] an acquittal under section 1348(2)." Dkt. 232 at 16. As discussed above, the two sub-sections are distinct, requiring proof of separate elements, and Defendant provides insufficient analysis as to why, specifically, a conviction under § 1348(2) but not § 1348(1) is impossible. In its argument for a new trial, Defendant does say that "section 1348(2) requires all that section 1348(1) requires, plus material misrepresentation." Dkt. 232 at 20. To the extent that it suggests that § 1348(1) is wholly contained in § 1348(2), however, this

---

[5] Defendant argues that the misstatement must have been made to the victim directly—here, to PANW—but that argument finds no textual support either from the statute, which requires only that the Defendant obtain money or property "by means of false or fraudulent pretenses," or from *United States v. Miller*, which found error in jury instructions that stated that wire fraud under § 1343 required only an intent to "deceive *or* cheat" (instead of "deceive *and* cheat"), 953 F.3d 1095, 1098 (9th Cir. 2020), and actually upheld the conviction, finding the instruction was harmless error, *id.* at 1103. *Miller* held that "wire fraud requires the intent to deceive and cheat—in other words, to deprive the victim of money or property *by means of deception*," *id.* at 1103—but does not require that the misrepresentation be directly uttered to the victim.

Moreover, contrary to Defendant's argument that there was no evidence that Defendant's statements to Nellore "influence[d] Nellore to give him trading advice," Dkt. 247 at 15, the government explicitly advanced that theory at closing, *see* Trial Tr. 1141:23-1142:4 ("The defendant knew that if he told Mr. Nellore how much he was making—in other words, millions—Mr. Nellore would turn off the pipeline of nonpublic revenue information and these massive amounts of money that the defendant was making would stop. That's what common sense, logic, and the evidence in this case tells you."), and there was ample circumstantial evidence for a jury to reach this conclusion.

argument flies in the face of Defendant's own belief that no reading of § 1348 should render the "two subsections . . . indistinguishable." Dkt. 247 at 7. Defendant's logic would make § 1348(1) entirely subsumed under § 1348(2), thereby rendering § 1348(2) superfluous: as these are but two separate sub-sections for the same crime, there is no reason prosecutors would ever charge with § 1348(2) if it were merely § 1348(1) but with additional elements. Defendant's theory does not comport with the language in the statute, and Defendant also cites no authorities to support the position. Indeed, the Supreme Court's holding in *United States v. Powell* actually counsels otherwise. 469 U.S. 57, 69 (1984) ("[T]here is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled."); *see id*. at 63 ("The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.").

The § 1348(2) conviction can alternatively be sustained, as the government argues, on a theory that Defendant aided and abetted Nellore's violation. For Defendant to have aided and abetted Nellore, Defendant must have "aided, counseled, commanded, induced, or procured that person with respect to at least one element of Securities Fraud," and must have "acted with the knowledge and intention of helping that person commit Securities Fraud." Dkt. 217 (Instruction 22). The government presented evidence that Defendant "actively sought out Nellore" to ask for PANW information, and continued both to seek that information and take very large trading positions on the information despite evidence suggesting that he knew Nellore was violating PANW confidentiality policies and obligations in providing it. Dkt. 241 at 18-19. That Nellore perhaps did not *need* help from Barama to violate § 1348(2) does not absolve Barama of the actions he took in asking for and trading on the confidential information, which could conceivably give rise to aiding and abetting liability. When considered against the totality of evidence described above, Defendant's other rebuttals—that the evidence showed Barama did not understand he was receiving confidential information, that Barama also made big trades when he did not have confidential information—remain unconvincing.

2. Materiality

Defendant next argues that the government failed to prove materiality, which it claims was an essential element of § 1348(2). In support, Defendant provides as examples the instructions used in *United States v. Hussain*, 972 F.3d 1138 (9th Cir. 2020), the pattern jury instructions of the District of South Carolina, and the Ninth Circuit's model instructions for Bank Fraud. Because the jury was not given any instruction with respect to materiality, he argues, it could not have been a rational jury which properly weighed the evidence.

Yet if materiality were indeed an "essential element" of § 1348(2) such that a jury must be instructed on its definition in order to be rational, a doubtful proposition in the first instance, then Defendant should have raised an objection to the instructions prior to the jury's deliberations.[6] Federal Rule of Criminal Procedure 52(b) precludes Defendant from raising this belated objection now. Moreover, the jury was properly instructed on § 1348(2), and the facts and circumstances of the case are such that there was no uncertainty regarding materiality. Defendant certainly does not explain how materiality would have been a dispositive issue on these facts—and, as the government notes, the jury did not express any confusion regarding the instruction.

3. Intent to Defraud

Defendant also argues the conviction cannot be sustained because the government did not prove that Defendant had an intent to defraud. As an example, Defendant argues that there was no evidence Defendant tried to conceal his trading behavior. Yet these arguments overlook the evidence presented at trial that would permit a rational juror to find Defendant's intent to defraud. In addition to the evidence presented about Defendant's knowledge of the impropriety of sharing and trading on confidential information and Defendant's lies to Nellore already discussed, the

---

[6] Defendant attempts to argue that "the only paragraph in the jury instructions that remotely defined materiality under § 1348(2) was removed at the government's request" and that "Defense counsel agreed with the government's request based on representations that Mr. Barama's case is not a misrepresentation or omission of material facts case." Dkt. 232 at 17-18. This, however, raises the same problem: in light of its vigorous argumentation that § 1348(2) *requires* proof of some kind of misrepresentation or omission, Defendant could not simultaneously believe that the government's case was "not a misrepresentation or omission of material facts case" and also accept a jury instruction on § 1348(2) at all.

ORDER DENYING MOTION FOR ACQUITTAL
CASE NO. 19-cr-00463-RS-2

10

government also presented evidence of Defendant's communications with Nellore immediately before or after PANW public earnings releases, and evidence of Defendant's ever-bolder bets (*i.e.*, the increasing size of his trades). The evidence presented at trial therefore furnished a sufficient basis upon which to conclude that the Defendant acted with an intent to defraud.

### B. Motion for a New Trial

Defendant argues in the alternative for a new trial, for which it bears the burden of demonstrating that there has been a serious miscarriage of justice. Yet Defendant fails to meet its burden in showing that this is the exceptional case in which a new trial is warranted.

Defendant's first and second arguments, that the jury was improperly instructed and that the verdict is logically inconsistent in light of the jury's conviction on § 1348(2) but acquittal on § 1348(1), repeat arguments advanced for the judgment of acquittal that were already addressed and rejected.

Defendant's third argument accuses the government of either a constructive amendment of the indictment—which occurs "when the charging terms of the indictment are altered, either literally or in effect," *United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014)—or a material variance from the indictment, which "involves a divergence between the allegations set forth in the indictment and the proof offered at trial" that "prejudice[s] the defendant's rights." *Id.* Either constructive amendment or material variance exists here, Defendant argues, because no theory of fraud based on material misrepresentation appears in the indictment. The Superseding Indictment alleges that Barama "participated in a scheme to defraud any person in connection with securities of PANW, and to obtain by means of false and fraudulent pretenses, representations and promises, money and property . . . by executing PANW securities transactions using PANW's Inside Information," Dkt. 30 at 5, and that Defendant "placed and caused to be placed trades using PANW's Inside Information in advance of the PANW earnings announcements" on specific dates. *Id.* at 7. The jury instructions closely track this language by referencing embezzlement or misappropriation of confidential business information; and the government proved what the indictment alleged—that Defendant executed PANW securities transactions using PANW inside

information he received from Nellore.

*United States v. Adamson*, 291 F.3d 606 (9th Cir. 2002), which Defendant invokes, does not hold to the contrary. The case explains that a variance is "generally found . . . where the indictment and the proof involve only a single, though materially different, set of facts," *id.* at 615, and itself reversed a conviction because the indictment charged the defendant with a *specific* misrepresentation, but the government advanced—and the jury instructions allowed a conviction on—dan altogether different misrepresentation. *Id.* at 616. In so deciding, *Adamson* explicitly noted the importance of the indictment's specification of a particular misrepresentation: "If the indictment had not specified a different particular misrepresentation, one might say the variance was benign. Having specified a different particular misrepresentation, however, the indictment not only failed to inform the defendant of the actual misrepresentation that would be shown at trial, but it also affirmatively misled the defendant and obstructed his defense at trial." *Id.* As the indictment in this case did present a particular misrepresentation, *Adamson* thus does not apply.

Defendant's remaining arguments about the insufficiency of evidence as to all counts of conviction are merely an encore of the arguments it mounted at trial, and are unpersuasive. Defendant was able to, and did, vigorously argue its case to the jury. Given the incriminating testimony and evidence presented at trial, including the specific examples described above, the jury reached a rational conclusion to the contrary—and this verdict was supported by enough evidence that a new trial is not warranted under Rule 33.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion for a judgment of acquittal or a new trial is denied.

**IT IS SO ORDERED**.

Dated: March 14, 2023

RICHARD SEEBORG
Chief United States District Judge